THE JOHN I. BRADY and THE WILDCROFT (two cases).

(Circuit Court of Appeals, Third Circuit. July 19, 1904.)

Nos. 36, 37.

1. COLLISION—STEAMSHIP AND TUG WITH TOW MEETING—APPROACHING TOO NEAR BEFORE CHANGING COURSE.

A steamship and a tug both *held* in fault for a collision between the ship and barges in tow of the tug, which occurred on the Delaware river in the night, on the ground that, although the two vessels saw each other when a mile apart, each held its course and approached head on until they were so close together that the danger of collision between them was imminent, and a confusion of signals resulted, which brought about the collision; the steamship also for failure to maintain an efficient lookout; and the tug for being on the left-hand side of the channel, and signaling her intention to pass on the starboard of the steamship, in violation of the rules; the evidence being insufficient to establish a custom which justified her in keeping that side of the channel in passing up the river.

Appeals from the District Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 115 Fed. 204.

J. Parker Kirlin and Henry R. Edmunds, for appellants.
Curtis Tilton, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. These appeals were heard together, inasmuch as the cases below depended upon the same facts and were heard upon the same depositions.

The libels were filed severally by James W. Levins, master of the schooner barge "Bertie and Maud," and by the P. Dougherty Company, owner of the barge "Calvert," against the steamship "Wildcroft" and the steam tug "John I. Brady," to recover damages growing out of the collision between the "Wildcroft" and the appellees' barges, while in tow of the "John I. Brady." The court below found the steamship and tug in fault, dividing the damages between them, and entered decrees accordingly. From these decrees, the appellants have taken these appeals.

The leading facts of the case, as disclosed by the record, are these:

The tug "John I. Brady," with a tow of four heavily laden barges, was proceeding up the Delaware river, between 8 and 9 o'clock p. m. of March 19, 1901. The tow was made up at Delaware City. There were four barges in two tiers, "two in each tier, close up," the distance between the two tiers being 10 feet or so, just enough to clear the rudders of the front tier. The schooner barge "Bertie and Maud" was on the port side, and the barge "Calvert" on the starboard side of the first tier, the barges "Provost" and "Experiment" being in the second tier. The hawser from the tug to the first tier of boats was about 125

feet in length, and the length of the tug 72 feet, the whole tow being about 600 feet in length. The regulation lights of the tug and tow were properly set and burning, there being a red light on the port side of the "Bertie and Maud" and a green light on the starboard side of the "Calvert," the starboard and the port sides of the two barges respectively being without lights. While the tow so made up was proceeding up the river, above Edgemoor, upon the western side of the channel, with lookouts properly stationed, the steamer "Wildcroft'" was observed coming down the river, more than a mile off, some of the witnesses on the tug saying that she bore somewhat on the starboard bow. The wind was blowing from the eastward, and strong. Those on the tug testified that it was usual for tows like the one in question to keep on the western side of the channel. The testimony of those on the tug is, that about half a mile distant, two whistles were blown by the tug, to indicate that she was going to the westward, and intended to pass the steamer on her starboard side. The pilot on the steamer says that he first observed the tug and tow a little on his port bow; that he gave them one whistle, to indicate that he would pass to the port side of the tow. He says, also, that the "Brady" at that time was showing a red light, which would indicate that she had not yet put her helm to starboard, to pass to the westward of the steamer. The witnesses on the "Wildcroft" state that they only heard the blast of one whistle from the tug, and the testimony on the part of the tug is, that after hearing the one whistle from the steamship, they repeated the blast of two whistles from the tug, indicating that she persisted in her intention to pass to the westward.

We may here quote from the findings of fact, and opinion of the learned judge of the court below:

"The steamship and tug approached each other nearly head on, both being westward of the channel course. Each vessel had a proper lookout and each saw the other more than a mile away. If the proper maneuvers had been executed, I have no doubt that a collision would have been avoided, for there was abundant room and depth of water in the channel for both vessels, and if they had taken due precautions the accident would not have happened. A strong wind was blowing from the northeast, and it may be that this may have had some part in preventing the steamship from hearing the tug's signals. As usual, it is impossible to reconcile the contradictory accounts of the witnesses that were called by the respective vessels, and I shall not attempt to discuss the two theories in detail. I do not accept either of them as a whole, for it seems clear to me that the collision can be explained much more simply and more probably than by following either as if it were completely true. The tug and her tow were certainly upon what would ordinarily be the wrong side of the channel, and although there seems to be a more or less prevailing custom for tugs with their tows to take the western side of the river at this point, I do not think the custom is sufficiently established to furnish an adequate excuse. Unquestionably, if the tug upon this occasion had been upon the right hand side of the channel, there would have been no collision, and upon that side, I think, she should have been. It was a fault in the tug to have been in the wrong place; but aside from this, I think it was plain that each vessel was to blame for holding a nearly head on course too long. The evidence satisfies me that each held this course until they came so near each other that unless signals were precisely and promptly made and obeyed, there was great danger of collision. This, as it seems to me, is the true explanation of what happened. In the darkness of the night they came closer to each other than either vessel supposed the distance to be; and when the true situation was recognized and each realized the unexpected peril, a not unnatural confusion

of signals occurred, neither vessel being quite certain what was best to be done or what the real intention of the other might be. There is the usual conflict of testimony concerning the color of the lights that could be seen from the respective vessels, and I have little doubt that toward the last, when it was impossible to avoid the collision, the conflict may perhaps be explained by the fact that each vessel changed its course in the hope of escaping the impending disaster. At this stage of the affair it would be useless to apportion the blame, if accurate apportionment be possible. The initial fault, as it seems to me, a fault for which both vessels are equally liable, was in approaching each other head on too close for safety. Apparently, each vessel either expected the other to give way, or was confident that the passing could be safely accomplished on the course that each was holding—the result being that when the final effort to pass was made, there were mistakes on both sides, in consequence of which the two barges were injured. Immediately before the collision took place, the tug, by a desperate sheer to starboard, barely escaped the steamship, which broke the hawser leading from the tug to the 'Bertie and Maud,' and struck its starboard bow against the port side of the barge's stem, forced its way between the two barges, breaking several of the breast lines by which they were attached to each other, and struck the port bow of the 'Calvert,' doing injury to that boat also. Some of the witnesses for the steamship testified that her way had been stopped before the collision took place, and that she was actually going astern; but considering the extent of the injury that she inflicted, this testimony seems to me to be unreliable. For the reasons given, I am of opinion that both the tug and the steamship were at fault, and that each of the barges is entitled to recover from both. As I understand, it is not seriously contended that the barges were guilty of negligence; but if such a position is really taken, I have no difficulty in finding that they were free from blame."

We agree with the learned judge of the court below, that the testimony shows that the steamship and the tow were approaching each other head on, or nearly so, and that it was the duty of the tug to have observed the directions of article 18, rule 1, of the rules of the supervising inspectors (Act June 7, 1897, c. 4, § 1, 30 Stat. 100 [U. S. Comp. St. 1901, p. 2881]), requiring steam vessels so approaching to pass each other port to port, and that the contention on behalf of the tug, that a custom existed, that tows of that kind should keep on the westward side of the channel under such circumstances, was not sufficiently sustained by the testimony to justify the tug in disregarding the directions of article 18, above referred to. We think, also, that the evidence shows that the steamer held on her head to head course too long before indicating, by proper signals, her intention as to passing, and persisted unreasonably in her intention to pass to the westward, after being made aware of the tug's intention of doing the same.

We think, also, the evidence shows that no sufficient lookout, as required by the inspectors' rules, was maintained on the bow of the steamship. The carpenter, who testifies that he was on the bow of the "Wildcroft" at and before the time of the collision, does not state that he was stationed as a lookout, but was doing work that necessarily distracted his attention.

On the whole, we think the case has been properly disposed of by the court below, whose decree is accordingly affirmed.